IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONTINENTAL MATERIALS, INC. | : CIVIL ACTION |
| | : |
| v. | : |
| | : NO. 14-6941 |
| ROBOTEX, INC. et al. | : |

### ORDER-MEMORANDUM

AND NOW, this 17th day of April 2015, upon consideration of Defendants' Motion to Dismiss (ECF Doc. No. 12), Plaintiff's Response (ECF Doc. No. 20), and Defendants' Reply (ECF Doc. No. 23), and the parties' briefs regarding an arbitration issue (ECF Doc. Nos. 24 & 25), and following oral argument, it is **ORDERED** that Defendants' Motion is **GRANTED IN PART AS TO COUNTS III AND IV and OTHERWISE DENIED** as described in this Order.

As detailed below, the Court retains personal jurisdiction and venue. We deny the motions to dismiss the Lanham Act claim (Count I) and contract claims in Count II relating to the Supply and Marketing Agreement. We dismiss Count III (fraud) with leave to amend to specify fraud under Fed. R. Civ.P. 9(b) not barred by the gist of the action doctrine to be filed no later than **April 24, 2015**. We dismiss Count IV (intentional interference) under the gist of the action doctrine. Defendants shall respond to the Complaint (or Amended Complaint re: Count III) on or before **May 8, 2015**.

## ANALYSIS

### A. Defendants' Fed.R.Civ.P. 12(b)(2) motion is DENIED.

Based on the affidavits submitted by the parties, the Court finds that it has specific personal jurisdiction over Defendants Robetex, Inc. ("Robetex") and Kerry Talbot ("Talbot") on Plaintiff Continental Materials, Inc.'s ("CMI") breach of contract claim.[1]

The "totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing" supports the finding of specific personal jurisdiction over Robetex as to CMI's breach of contract claim. *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001) (citation omitted). Robetex, through its President, Talbot, entered into a Supply and Marketing Agreement ("SMA") and created "continuing relationships and obligations" with CMI in Pennsylvania; a relationship achieved, in part, by physical trips to Pennsylvania.[2] The SMA, appointing CMI as the exclusive distributor

---

[1] When a defendant raises the defense of personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007. Where the Court does not hold an evidentiary hearing, a plaintiff need only establish a *prima facie* case of personal jurisdiction. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). The plaintiff is "entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Id.* (citation omitted). Plaintiff, however, must support its allegations with affidavits or other competent evidence and may not simply rely on its pleadings. *See Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). This Court may exercise personal jurisdiction according to the law of Pennsylvania. *See* Fed.R.Civ.P. 4(k)(1)(A). Pennsylvania's long-arm statute permits Pennsylvania state courts to exercise personal jurisdiction over nonresident defendants "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S. § 5322(b). In its Opposition, CMI does not assert general jurisdiction over Defendants. Instead, it "assert[s] that Robetex and Talbot are subject to specific personal jurisdiction," and relies on the affidavit of its President, Peter J. Fischer (ECF Doc. No. 20 at 5) The Court limits its analysis to specific jurisdiction. Specific jurisdiction "requires the plaintiff to show that the particular cause of action sued upon arose from the defendant's activities within the forum state." *Toussant v. Williams*, No. 14-4266, 2014 WL 6676748, *3 (E.D. Pa. Nov. 25, 2014) (internal quotation omitted). Our Court of Appeals directs a three-part inquiry to determine whether specific jurisdiction exists: first, "the defendant must have purposefully directed [its] activities at the forum;" second, "the litigation must arise out of or relate to at least one of those activities;" and three, "if the first two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (internal quotations omitted); *O'Connor*, 496 F.3d at 317 (internal quotations omitted).

[2] The Declaration of Peter J. Fischer ("Fischer") demonstrates that he and Talbot first met at a trade show in February 2013 where the two men discussed the idea of CMI becoming the exclusive distributor of Robetex's roofing product. (Decl. at ¶3) After the trade show, Fischer and Talbot exchanged emails regarding potential business dealings which resulted in Talbot flying to Pennsylvania in mid-March 2013. (Decl. at ¶4) At the March

2

of Robetex's products in North America, amounted to purposeful direction of its activities in Pennsylvania. When a dispute arose regarding performance under the SMA, Talbot flew to Philadelphia to resolve the parties' issues and agreed to a settlement. CMI's breach of contract claim arises out of both the SMA and the Settlement Agreement. We find that Defendants' contacts with Pennsylvania were instrumental in the formation of both the SMA and the Settlement Agreement as well as the alleged breaches of those agreements. *See General Elec. Co. v . Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001).[3]

As to CMI's tort based claims against Robetex and Talbot[4] - violations of the Lanham Act (Count I), fraud (Count III) and intentional interference with contractual relations (Count IV)

---

2013 meeting in Pennsylvania, Fischer and Talbot "negotiated the framework" for the SMA dated May 1, 2013. (Decl. at ¶¶4-5) In December 2013, Talbot made another visit to Pennsylvania to meet with Fischer to discuss their business relationship and marketing strategy. (Decl. at ¶5) After a series of emails, Talbot again came to meet with Fischer in August 2014. Around August and September 2014, CMI discovered that Robetex altered bills of lading to hide the fact that Robetex shipped CMI substandard product from China. (Decl. at ¶¶9-12) Talbot again traveled to Pennsylvania in early October 2014 to meet with Fischer regarding the dispute over product. (Decl. at ¶¶12-13) At that meeting, Talbot acknowledged that the bills of lading presented by Robetex to CMI for payment were fraudulent, and agreed to a Settlement Agreement. (Decl. at ¶¶13-14) Talbot's declarations do not dispute this. The Settlement Agreement is dated October 14, 2014, was signed by Talbot in Georgia, and faxed to CMI in Pennsylvania (Decl. at ¶13)

[3] In support of their motion, Defendants argue that it was CMI, not Robetex and Talbot, who "reached out" to solicit business, that Talbot only came to Pennsylvania three (3) times and only on CMI's invitation, and that the trips to Pennsylvania were not instrumental in the formation or breach of either contracts, citing *General Electric* (ECF Doc. No. 12-2 at 10-11). The Court of Appeals in *General Electric* affirmed the district court's exercise of specific jurisdiction over a German company that guaranteed the obligations of its subsidiary, noting that "specific jurisdiction frequently depends on physical contacts with the forum," and that "actual presence during pre-contractual negotiations, performance, and resolution of post-contract difficulties is generally factored into the jurisdictional determination." *General Elec.*, 270 F.3d at 150 (citing *Remick v. Manfredy*, 238 F.3d 248, 255-56 (3d Cir. 2001) and *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223-4 (3d Cir. 1992)). Rejecting the argument Defendants make here, the Court stated that "it is not significant that one or the other party initiated the relationship," and that "in the commercial milieu, the intention to establish a common venture extending over a substantial period of time is a more important consideration." *General Elec.* at 150 (citation omitted).

[4] In a footnote, Talbot argues that the Court does not have personal jurisdiction over him individually where his actions were taken in his capacity as President of Robetex, citing *United Products Corp. v. Admiral Tool & Manuf. Co.*, 122 F.Supp. 2d 560 (E.D. Pa. 2000). Generally, a court does not have personal jurisdiction over an individual defendant whose only contact with the forum state are those taken in his corporate capacity. *Id.* at 562. The general rule does not apply when the corporate officer is charged with "(1) committing a tort in his corporate capacity or (2) violating a statutory scheme that provides for personal, as well as corporate, liability for corporate actions." *Id.* However, "in Pennsylvania, corporate officers and directors are liable for the tortious acts the corporation commits under their direction or with their participation." *Advanced Fluid Systems, Inc. v. Huber*, No. 13-3087, 2014 WL 1808652, *12 (M.D. Pa. May 7, 2014) (citation omitted). The fraud claim alleges that Robetex and Talbot

– the Court applies the "effects test" to determine whether there is personal jurisdiction.[5] *See Calder v. Jones*, 465 U.S. 783 (1984); *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 260-61 (3d Cir. 1998). CMI sufficiently alleges that Robetex and Talbot committed torts, that CMI has been harmed, and that Defendants directed their conduct toward CMI in Pennsylvania to state a *prima facie* case of jurisdiction over Robetex and Talbot under the "effects test."[6]

Having determined that minimum contacts exist between Robetex and Talbot and Pennsylvania, we find that the Court's exercise of jurisdiction comports with "traditional notions of fair plan and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "The existence of minimum contacts makes jurisdiction presumptively constitutional and the defendant 'must present a compelling case that he presence of some other considerations would

---

misrepresented the origin of the product and that Talbot, on behalf of Robetex, lied to CMI regarding the shipments of product to conceal the fact that the product was not produced in the India plant as the parties agreed. (Compl. at ¶¶51-57). Thus, there is an allegation that Talbot, as the President of Robetex, committed fraud sufficient to bring Talbot outside the general rule. Before exercising personal jurisdiction over corporate officers, a court considers three factors: "(1) the officer's role in the corporate structure; (2) the quality of the officer's contacts with the forum state; and (3) the extent and nature of the officer's participation in the alleged tortious conduct." *Id.* at *13 (citation omitted). The allegations of the Complaint, along with Fischer's Declaration, sufficiently establish that Talbot, as the President of Robetex, negotiated in Pennsylvania both the SMA and the Settlement Agreement, and entered into both the SMA and Settlement Agreement on behalf of Robetex and travelled to Pennsylvania on three or four occasions, including trips to Pennsylvania in December 2013 and August 2014 "to discuss the ongoing business relationship [with CMI] and strategize our marketing." (Fischer Decl. at ¶5).

[5] Under the "effects test," the plaintiff must show that "(1) defendant committed an intentional tort, (2) plaintiff felt the brunt of the harm in the forum state such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort, and (3) the defendant expressly aimed his tortious conduct at the forum state such that the forum can be said to be the focal point of the tortious activity." *IMO Indus,* 155 F.3d at 265-66 (footnote omitted). To satisfy the third element, the plaintiff "must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id.* at 266.

[6] CMI alleges it placed an order for Robetex product which, per the SMA, would be sold with a CMI branded label and manufactured at a plant in India (Compl. at ¶¶10, 12); in June 2014, CMI ordered five containers of product for which it paid on invoices issued by Robetex (*Id.* at ¶¶14-16, 56); instead of providing CMI with the agreed upon materials, Robetex diverted non-conforming product to its warehouse, altered the packaging to hide the fact that the product came from another plant, and put the CMI brand mark on to the product without CMI's authority (*Id.* at ¶¶19-21); Robetex falsified bills of lading to CMI to reflect that the product came from the agreed upon plant (India) when the materials actually came from another plant in China (*Id.* at ¶¶ 24-26); and when Fischer and Talbot met on October 3, 2014 to address these issues, Talbot admitted to the actions (*Id.* at ¶28; Fischer Decl. at ¶¶12-13); and, after entering into a Settlement Agreement, Robetex breached the terms of that agreement (Compl. at ¶¶43-45).

render jurisdiction unreasonable.'" *O'Connor*, 496 F.3d at 324 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Defendants failed to present such a "compelling case."

### B. Defendants' motion pursuant to Fed.R.Civ.P. 12(b)(3) to dismiss the complaint for improper venue or, in the alternative, to transfer the action pursuant to 28 U.S.C. §1404(a) is DENIED.

CMI's asserts venue in this District under 28 U.S.C. §1391(b)(2) because a "substantial part of the events or omissions giving rise to the claim occurred" here. A defendant seeking to dismiss a case for improper venue under Rule 12(b)(3) bears the burden of demonstrating that venue is improper. *Cargill Cocoa & Chocolate, Inc. v. Abco Labs., Inc.*, No. 13-6004, 2014 WL 4795028, *2 (E.D. Pa. Sept. 26, 2014) (citing *Myers v. American Dental Assoc.*, 695 F.2d 716, 724–725 (3d Cir.1982)). In considering a motion to dismiss for improper venue, the Court accepts as true the allegations in the Complaint, "although the parties may submit affidavits in support of their positions," and the Court must "draw all reasonable inferences and resolve all factual conflicts in the plaintiff[']s favor." *Giuliano v. CDSI I Holding Co.*, No. 13-2776, 2014 WL 1032704, *1 (E.D. Pa. Mar. 17, 2014) (quoting *Chester v. Beard*, No. 07-4742, 2008 WL 2310946, *5 (E.D. Pa. June 1, 2008)). Based on the above analysis, the Court finds that a "substantial part of the events or omission giving rise" to CMI's claim occurred in Pennsylvania, and venue is proper in this District. Defendants have not met their burden of demonstrating that venue is improper.

The Court declines to transfer this matter to the United States District Court for the Northern District of Georgia under 28 U.S.C. §1404(a). Under 28 U.S.C. §1404(a), a district court "[f]or the convenience of parties and witnesses, in the interest of justice, . . . may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties consented." "Section 1404(a) is intended to place

discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation omitted); *see also Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995).

The burden of establishing the need for transfer is on the moving party. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).[7] Defendants argue that the matter should be transferred to Georgia because (1) all of Defendants' witnesses reside in Georgia and North Carolina; (2) all of its records and documents are located in Georgia; and (3) the Northern District of Georgia "has a more significant connection to this dispute" than this Court "because all of the alleged wrongful conduct occurred in Georgia and North Carolina." (ECF Doc. No. 12-2 at 13-14).[8]

While it may be more convenient for Defendants to litigate in the Northern District of Georgia, this factor does not weigh in Defendants' favor.[9] Defendants fail to establish how the convenience of its witnesses trumps that of CMI's; a Pennsylvania corporation that chose its

---

[7] The moving party must show that the balance of public and private factors articulated in *Jumara* weigh strongly in favor of transfer. *See e.g. Bartlett v. Kutztown Univ.*, No. 13-4331, 2015 WL 766000, at *18 (E.D. Pa. Feb. 23, 2015). The private interests factors include: "[1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879 (citations omitted). The public interest factors include: "[1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879-80 (citations omitted).

[8] To rebut the general rule that a plaintiff's choice of forum is given significant weight, Defendants additionally assert that CMI has a location in Douglasville, Georgia. Mr. Fischer's Declaration, however, states that the Douglasville facility is a shipping location for asphalt which is neither owned nor operated by CMI. (Fischer Decl. at ¶17).

[9] The "convenience of the witnesses" factor is relevant "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." Defendants do not make any argument that any of its witnesses may "actually be unavailable for trial" in the Eastern District. *See, e.g., Blue Ribbon Commodity Traders, Inc. v. Quality Foods Distributors*, No. 07-4037, 2008 WL 269487, *3 (E.D. Pa. Jan. 31, 2008)

6

home forum for this litigation. CMI's choice is entitled to deference and should not be lightly disturbed. *Jumara*, 55 F.3d at 879. Similarly, the fact that Defendants' records and documents are located in Georgia does not weigh in its favor. There is no indication that Defendants cannot simply send its documents and records to this District. CMI would be faced with the same burden if the case were transferred to the Northern District of Georgia. This factor does not weigh in Defendants' favor. Defendants' position merely shifts their inconvenience to CMI. Transfer "is not warranted if it would merely shift the inconvenience from the defendant to the plaintiff." *Blue Ribbon Commodity Traders, Inc.* 2008 WL 269487 at *3 (internal quotation omitted).

Finally, the Court does not find persuasive Defendants' assertion that the Northern District of Georgia "has a more significant connection to this dispute" than this Court. As previously discussed, the Eastern District of Pennsylvania is CMI's home forum and there is a strong presumption in favor of venue here, and its claims arose out of actions affecting CMI in this District. Notably, the Settlement Agreement that forms part of CMI's breach of contract claim appears to contain a Pennsylvania choice of law provision. Defendants fail to demonstrate how local interests would be better served by deciding this case in Georgia, particularly where a court in Georgia may be required to apply Pennsylvania law. The Court finds that Defendants failed to satisfy their burden of proving the interests of justice would be better served by a transfer to the Northern District of Georgia. The balance of the *Jumara* factors weights in favor of retaining venue here. Defendants' motion is denied.

### C. Defendants' motion to dismiss the fraud (Count III) and intentional interference with contractual relations (Count IV) claims pursuant to Fed.R.Civ.P. 12(b)(6) is GRANTED.

The gist of the action doctrine bars CMI's fraud and intentional interference with contractual relations claims. CMI's fraud claim is based on Robetex's alleged scheme to sell CMI "substandard and nonconforming goods" from a plant in China rather than the parties' agreed upon "conforming product" from a plant in India. (Compl. at ¶¶51-57) CMI alleges that the goods it paid for were "not conforming to the specifications in the contract" and "were not contractually authorized." (*Id.* at ¶¶52, 56)

Under Pennsylvania law, the gist of doctrine "is designed to maintain the conceptual distinction between breach of contract and tort claims," and precludes a plaintiff from "re-casting ordinary breach of contract claims into tort claims." *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002) (citing *Bash v. Bell Tel. Co.*, 601 A.2d 825, 829 (Pa. Super. 1992)).[10] While non-performance of a contract does not constitute fraud, "it is possible that a breach of contract also gives rise to an actionable tort." *Id.* (quoting *Bash*, 601 A.2d at 829). "To be construed as in tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral." *Id.*

In determining whether the "gist of the action" sounds in tort or contract, the Court must ascertain the source of the duties allegedly breached. *Synthes, Inc. v. Emerge Medical, Inc.*, 25 F.Supp. 3d 617, 725 (E.D. Pa. 2014). Plaintiff alleges that it did not end the contractual relationship for a brief period of time after it discovered the alleged fraud. CMI does not allege that it paid any money or lost any rights during this short period (approximately a month in

---

[10] Under *eToll*, the gist of the action doctrine bars tort claims: "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *eToll*, 811 A.2d at 19 (internal citations omitted).

2014). As presently pled, CMI does not meet the limited exception described in *Synthes* to show a continuation of the contractual relationship. *Id.* at 725. CMI may, subject to Fed.R.Civ.P. 11, amend Count III by April 24, 2015 to specifically plead reliance and damage caused by the alleged misrepresentations that arise separate from the contract duties.

CMI's claim for intentional interference with contractual relations is barred by the gist of the action doctrine. CMI's claim is based on the allegation that Robetex and Talbot deliberately solicited CMI's customers to purchase the non-conforming goods carrying CMI's mark, which diluted the value of CMI's mark and its relationships and reputation with its customers. (Compl. at ¶¶59-64) Defendants' duty, however, to refrain from soliciting CMI's customers arose solely from the contractual relationship between the parties, and the success of CMI's claim is "wholly dependent on the terms of [the] contract" between the parties. *eToll*, 811 A.2d at 19. The Court finds unpersuasive CMI's argument that Defendants' improper solicitation of CMI customers was "extra-contractual" and "occurred after the termination of the SMA." CMI provides no authority to support its argument. Without the SMA, Defendants would not have had any obligation to CMI regarding solicitation of its customers. CMI's intentional interference with contractual relations claim is barred by the gist of the action doctrine.

Subject to an amended Count III (fraud) to be filed in an Amended Complaint no later than April 24, 2015, Defendant Talbot shall be dismissed as a party.

### D. Defendants' motion to dismiss the Lanham Act claim (Count I) and breach of the Supply and Marketing Agreement (Count II) is DENIED.

CMI specifically pleads a Lanham Act claim arising from selling "nonconforming and inferior goods with CMI's mark on them" after the Settlement Agreement. (Compl. at ¶ 32) Defendants raise factual defenses, and possible affirmative defenses based on the "first sale

9

doctrine" claiming that CMI sold the products in the nonconforming packaging. These issues are more prudently resolved at summary judgment or by the fact finder.

CMI also specifically pleads that Robetex breached the SMA by soliciting customers and shipping products that did not conform to the contract specifications. Robetex disputes this allegation, arguing that there is no provision in the SMA requiring Robetex to have its product manufactured at a specific plant in India. We will not, at this stage of the proceeding, engage in interpretation of the SMA. Robetex similarly argues that under the SMA, it is "clear" that Robetex was permitted to solicit certain entities; and because CMI failed to identify the entities solicited by Robetex, it fails to state a claim. Robetex seeks greater specificity as to any alleged specifications not met and the identity of solicited customers. As with the Lanham Act claim, these disputes are subject to discovery and review later in the proceedings.

_____
KEARNEY, J.